## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

REGINA NELL MCCRIGHT;
CRAIG GARDNER;
CYNTHIA GARDNER;
KIMBERLY TYNER;
STACEY HALLMAN;
A.B.B., by and through his next Friend, Regina Nell McCright;
S.B.B., by and through his next Friend, Regina Nell McCright;
T.S.B., by and through her next Friend, Regina Nell McCright;
S.F.G., by and through his next Friend, Cynthia Gardner;
A.S.G., by and through her next Friend, Cynthia Gardner;
T.R.T., by and through his next Friend, Kim Tyner;
H.H., by and through her next Friend, Stacey Hallman;
on their own behalf and on behalf of all others similarly situated          PLAINTIFFS

VS.                                    CIVIL ACTION NO.   3:18-cv-306-WHB-JCG

THE MUNICIPALITY OF PEARL, MISSISSIPPI,
and JOHN DOES 1-20                                        DEFENDANTS

### COMPLAINT

### JURY TRIAL DEMANDED
### REQUEST FOR CLASS ACTION

### INTRODUCTION

1.      This is a civil rights class action law suit brought on behalf of the named Plaintiffs

and other parents and children who have suffered harm as a result of violations of their clearly

established rights by the Pearl Youth Court. These violations have resulted in wrongful removal

of children from their parents and wrongful continued separation between parents and children,

as well as unwarranted restrictions on visitation and other contact. In addition to harms suffered

by parents and children, these violations resulted with children being placed in an overburdened

1

foster care system, using resources that are meant for those children who truly abused and neglected and are properly in state custody.

2.      The bond between a parent and a child is unparalleled. A parent and child grow and mature simultaneously, and become the biggest parts of each other's lives. For a parent, being able to see your child develop reaching milestones and making decisions, learning from their accomplishments and mistakes are irreplaceable and some of the most rewarding moments in the lives of parents and their children. Depriving parents and their children of these experiences is gut-wrenching and undoubtedly harmful to both.

3.      Removal of children from parents who have been their primary caregivers is a severe threat to their development. It disrupts and grossly endangers what children most need, that is, the continuity of affectionate care from those to whom they are attached through bonds of love.

4.      Families are the foundational cornerstones of society. Constitutional provisions exist to protect people from an overreaching government's unwarranted interference with the parent child relationship. The harm that that these constitutional protections stand to prohibit is neither merely academic nor theoretical, but rather very real injurious harm that follows one throughout a lifetime. Children and parents who have been wrongfully separated from one another suffer post-traumatic stress disorder, anxiety, depression, anger issues, inability to trust and other physical and psychological harms that follow them throughout their lives. The bonds that tie parent and child are sacred and critical to the well-being of each.

5.      The purpose of the Youth Court is found in Section 43-21-103 of the Mississippi Code Annotated and states:

> This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the youth court shall become a responsible, accountable and

productive citizen, and that each such child shall receive such care, guidance and control, preferably in such child's own home as is conducive toward that end and is in the state's and the child's best interest. It is the public policy of this state that the parents of each child shall be primarily responsible for the care, support, education and welfare of such children; however, when it is necessary that a child be removed from the control of such child's parents, the youth court shall secure proper care for such child.

Pearl Youth Court has run afoul of this purpose. On October 25, 2017, Pearl, Mississippi, Youth Court Judge John Shirley resigned and the Pearl Youth Court was permanently closed, marking the end of the only Municipal Youth Court in the State of Mississippi. This closure comes after Judge Shirley entered an order on August 22, 2016, prohibiting a mother from having contact with her son for failure to pay sua sponte court fines.

6.    This is not the first time Pearl Youth Court has been in the spotlight for interfering with the rights of parents and children unnecessarily. In August of 2003, the Supreme Court of Mississippi handed down a decision in *Commission on Judicial Performance v. Jane A. Perdue,* 853 So. 2d 85 (Miss. 2003) The facts were as follows:

(1) Judge Perdue entered an ex parte order, in her capacity as Youth Court Referee for the Rankin County Youth Court, as presented by the City of Pearl Youth Court Prosecutor who regularly appeared before her in her capacity as Youth Court Judge for the City of Pearl, but on this occasion the Prosecutor was representing Mr. Tyner (Lewis) as privately retained counsel; (2) Judge Perdue signed this ex parte order awarding Lewis the temporary custody of the Tyners' minor child without a petition being filed, without notice to Mrs. Tyner (Kim) as the custodial parent, without evidence being taken, and without an official court file ever being established; (3) Judge Perdue, upon having the parties and attorneys before her for a review hearing, refused to explain her reasons for the entry of this order and refused to allow evidence to be offered on behalf of Kim; (4) Judge Perdue, on that same day, continued in effect this same order, thus continuing to deprive Kim of the custody of her daughter, although the prior chancery court order awarding her the primary physical and legal custody of her minor child was still in effect; and, (5) Judge Perdue's actions caused Kim to be deprived of lawful custody of her child, which custody was restored to her only after incurring attorney's fees in excess of $13,000.00. *Id.*

7.    The Court ultimately determined that "Judge Perdue's behavior constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, in violation of Art. 6, § 177, Miss. Const., 1890, as amended." *Id.* Thus, Defendants have been on notice of such conduct since at least 2003.

8.    The 14th Amendment of the Constitution of the United States of America states in pertinent part, "No state shall . . . deprive any person of life liberty or property without due process of law . . . ." These provisions require that the government follow adequate procedures in taking away an individual's life, liberty or property. The Youth Court Act, as codified in Mississippi Code Annotated §§43-21-1 through 43-25-9, and the Mississippi Uniform Rules of Youth Court Practice, as well as federal legislation, such as The Child Abuse Prevention and Treatment Act, The Adoption Assistance and Child Welfare Act of 1980, and The Adoption and Safe Families Act, set out specific procedures to which the Youth Court must adhere. The Pearl Youth Court's actions have created a continuum of unprecedented statutory violations that amount to colossal violations of parents' and children's civil rights, resulting in unnecessary harm to both.

## JURISDICTION AND VENUE

9..    This action is brought pursuant to 42 U.S.C. § 1983 to redress violations of the United States Constitution, federal statutes and State statutes that protect federal rights. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3).

10.    This is an action brought for money damages, including punitive damages for reckless indifference and willful violations of federally protected rights.

4

11.     The Court has supplemental jurisdiction over related state law claims asserted herein pursuant to 28 U.S.C. § 1367.  Supplemental jurisdiction is appropriate because Plaintiffs' state law claims form part of the same case or controversy as Plaintiffs' federal claims.

12.     Venue is proper here pursuant to 28 U.S.C. § 1391(b).  The claims arise in this district, and one or more of the Defendants reside or may be deemed to reside in this district.

## PARTIES

### Named Plaintiffs

13.     Plaintiff Regina Nell McCright is an adult resident citizen of Mississippi, specifically residing at 315 Fern Spring Drive, Pearl, Mississippi 39208, whose three children were the subject of a Pearl Youth Court matter.

14.     Plaintiff A.B.B. is a seventeen-year-old male who was the subject of a Pearl Youth Court action.

15.     A.B.B. appears in this action through his next friend and natural mother, Regina Nell McCright

16.     Plaintiff S.B.B. is a thirteen-year-old female child who was the subject of a Pearl Youth Court action.

17.     S.B.B. appears in this action through her next friend and natural mother, Regina Nell McCright.

18.     Plaintiff T.S.B. is a twelve-year-old male child who was the subject of a Pearl Youth Court action.

19.     T.S.B. appears in this action through his next friend and natural mother, Regina Nell McCright.

5

20.     Plaintiffs William Craig Gardner and Cynthia Gardner, adult resident citizens of Mississippi, specifically residing at 370 Buccaneer Drive, Hattiesburg, Mississippi 39402, are husband and wife whose two children were the subject of a Pearl Youth Court action.

21.     Plaintiff S.F.G. is a fifteen-year-old male child who was the subject of a Pearl Youth Court action.

22.     S.F.G. appears in this action through his next friend and natural mother, Cynthia Gardner.

23.     Plaintiff A.S.G. is a six-year-old female child who was the subject of a Pearl Youth Court action.

24.     A.S.G. appears in this action through her next friend and natural mother, Cynthia Gardner.

25.     Plaintiff Kim Tyner is an adult resident citizen of Mississippi, specifically residing at 1824 August Bend, Madison, Mississippi 39110 whose child was the subject of a Pearl Youth Court action.

26.     T.R.T. appears in this action through his next friend and natural mother, Kim Tyner

27.     Plaintiff Stacey Hallman is an adult resident citizen of Mississippi, specifically residing at 30333 Little Coontail Road, Aberdeen, Mississippi 39730 whose child was the subject of a Pearl Youth Court action.

28.     Plaintiff H.H. is an eight-year-old female child who was the subject of a Pearl Youth Court action.

29.     H.H. appears in this action through her next friend and natural parent, Stacey Hallman.

**Defendants**

30. Defendant, City of Pearl, may be served through the Mayor or the City Clerk of

Pearl.  The City Clerk is Kelly Scouten at 2420 Old Brandon Road, Pearl, Mississippi

39208.  Mayor Jake Windham at 2420 Old Brandon Road, Pearl, Mississippi 39208.

**CLASS ACTION ALLEGATIONS**

31.     This action is properly maintained as a class action pursuant to Rule 23(a) and

(b)(2) of the Federal Rules of Civil Procedure.  It is brought on behalf of two classes of plaintiffs

as defined as follows:

    a.  Group 1:  Children judicially processed in the Pearl Youth Court.  For purposes of

        this litigation, judicially processed can be reasonably interpreted or defined in

        accordance with Title 43 of the Mississippi Code Annotated.  This group will and

        would include those children who have been judicially processed in the Pearl

        Youth Court under Title 43:

            i. Neglected children;[1]

            ii.     Abused children;[2]

            iii.     Child/ren in need of supervision (CHINS);[3]

---

[1] "Neglected Child" means a child: (i) whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, or education as required by law, or medical, surgical, or other care necessary for his well-being; provided, however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful under any provision of this chapter; or (ii) who is otherwise without proper care, custody, supervision or support; or (iii) who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether said mental condition be mentally retarded or mentally ill; or (iv) who, for any reason, lacks the necessary for his health, morals or well-being.  Miss. Code Ann. § 43-21-105(1).

[2] "Abused child" means a child whose parent, guardian or custodian or any person responsible for his care or support, whether legally obligated to do so or not, has caused or allowed to be caused upon said child sexual abuse, sexual exploitation, emotional abuse, mental injury, nonaccidental physical injury or other maltreatment. Provided, however, that physical discipline, include spanking, performed on a child by a parent, guardian or custodian in a reasonable manner shall not be deemed abuse under this section. Miss. Code Ann. § 43-21-105(m).

iv.      Children who were judicially processed in the Pearl Youth Court but otherwise non-adjudicated any of the status designations above-referenced.

v.      This group does not include "dependent child/ren" as defined by the Mississippi Code.[4]

b.  Group 2:  Those parties in interest of those children who have been judicially processed.  The parties in interest will and would include:

i. Biological/natural AND/OR adopted parents;[5]

ii.     Next of kin/relative who has been granted durable legal custody of children;[6]

    1.  "Friend of" Designation;

    2.  Guardian;[7]

    3.  Custodian;[8]

    4.  Legal custodian;[9]

---

[3] "Child in need of supervision" means a child who has reached his seventh birthday and is in need of treatment or rehabilitation because the child: (i) is habitually disobedient of reasonable and lawful commands of his parent, guardian or custodian or is ungovernable; or (ii) while being required to attend school, willfully and habitually violates the rules thereof or willfully and habitually absents himself therefrom; or (iii) runs away from home without good cause; or (iv) has committed a delinquent act or acts.  Miss. Code Ann. § 43-21-105(k).

[4] A "dependent child" means any child who is not a child in need of supervision, a delinquent child, an abused child or a neglected child, and which child has been voluntarily placed in the custody of the Department of Human Services by his parent, guardian or custodian. Miss. Code Ann. § 43-21-105(p).

[5] "Parent" means the father or mother to whom the child has been born, or the father or mother by whom the child has been legally adopted.  Miss. Code Ann. § 43-21-105(e).

[6] "Durable legal custody" means the legal status created by a court order which gives the durable legal custodian the responsibilities of physical possession of the child and the duty to provide him with care, nurture, welfare, food, shelter, education and reasonable medical care.  All these duties as enumerated are subject to the residual rights and responsibilities of the natural parent(s) or guardian(s) of the child or children. Miss. Code Ann. § 43-21-105(y).

[7] "Guardian" means a court-appointed guardian of the person of a child.  Miss. Code Ann. § 43-21-105(f).

[8] "Custodian" means any person having the present care or custody of a child whether such person be a parent or otherwise. Miss. Code Ann. § 43-21-105(g).

[9] "Legal custodian" means a court-appointed custodian of the child. Miss. Code Ann. § 43-21-105(h).

iii. This group does not include any agency or individual caregiver licensed by the Mississippi Department of Human Services who has, is, or will be providing for children at a given time.

31.    The questions of law and fact raised by the Named Plaintiffs' claims are common to and typical of those raised by each respective putative class member they seek to represent. Each child and parent relied on the Defendant for court related services, and was detrimentally harmed by the deprivation of their prescribed fundamental and Constitutional rights.

A.  1.  Questions of fact common to Group 1(the children) include:

      a.  Whether Defendants failed to provide proper notice of proceedings.

      b.  Whether Defendants failed to provide opportunity to be heard.

      c.  Whether Defendants failed to hear and consider evidence.

      d.  Whether Defendants failed to protect each child's interest.

      e.  Whether Defendants failed to appoint a lawyer when required.

      f.  Whether Defendants failed to follow federal and state statutory proceedings.

      g.  Whether Defendants failed to follow rules of court.

      h.  Whether Plaintiffs were wrongfully removed.

      i.  Whether Plaintiffs were continually separated from parents.

      j.  Whether Plaintiffs' contact with a parent was wrongfully restricted.

2.  Questions of law common to Group 1 (the children) include:

      a.    Whether the Defendants' actions and inactions violate class Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution to be safe from harm while parties in interest of the Pearl Youth Court.

      b.    Whether the Defendants' actions and inactions violated class Plaintiffs' procedural due process rights under the Fifth and Fourteenth Amendment to the

9

United States Constitution to be safe from harm while parties in interest of the Pearl Youth Court.

c.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights under the Fourth Amendment of the United States Constitution to be safe from harm while parties in interest of the Pearl Youth Court.

d.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights due to conspiracy among the Defendants.

e.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights pursuant to The Youth Court Act, as codified in Mississippi Code Annotated §§43-21-1 through 43-25-9, as well as federal legislation, such as The Child Abuse Prevention and Treatment Act, The Adoption Assistance and Child Welfare Act of 1980, and The Adoption and Safe Families Act,

B. 1.  Questions of fact common to Group 2 (the parents' group) class include:

a.  Whether Defendants failed to provide notice of proceedings.

b.  Whether Defendants failed to provide opportunity to be heard.

c.  Whether Defendants failed to hear and consider evidence.

d.  Whether Defendants failed to follow Federal and State statutory proceedings.

e.  Whether Defendants failed to follow rules of court.

f.  Whether Plaintiffs' children were wrongfully removed.

g.  Whether Plaintiffs' contact with their child was wrongfully restricted.

h.  Whether Plaintiffs were continually separated from their children.

i.  Whether Plaintiffs were required to pay court assessed fees and/or fines as a condition precedent to reunification.

2.  Questions of law common to Group 2 (the parents' group) include:

a.  Whether the Defendants' actions and inactions violate class Plaintiffs' rights under the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution to be safe from harm while parties in interest of the Pearl Youth Court.

b.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights under the Procedural Due Process Clauses of the Fifth and Fourteenth Amendment to the United States Constitution to be safe from harm while parties in interest of the Pearl Youth Court.

c.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights under the Fourth Amendment of the United States Constitution to be safe from harm while parties in interest of the Pearl Youth Court.

d.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights due to conspiracy among the Defendants.

e.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights under the Eighth Amendment of the United States Constitution to be safe from harm while parties in interest of the Pearl Youth Court.

f.  Whether the Defendants' actions and inactions violated class Plaintiffs' rights from malicious prosecution.

32.    The Named Plaintiffs will fairly and adequately protect the interests of the classes they represent.

33.    Each Named Plaintiff child appears by a next friend, and each next friend is sufficiently familiar with the facts of the child's situation to fairly and adequately represent the child's interest in this litigation.

34.    Plaintiffs are represented by John R. Reeves, who has extensive experience litigating complex lawsuits in state and federal court, and Kelly G. Williams, who has extensive experience litigating and is a Child Welfare Law Specialist[10]. Plaintiffs' attorney has identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent these classes.

---

[10] The Child Welfare Law Specialist certification is through the National Association of Counsel for Children, which is accredited by the American Bar Association.

35.    Defendants have acted or failed to act on grounds generally applicable to all Plaintiff class members, necessitating class-wide relief. Plaintiffs' counsel knows of no conflicts among class members.

## STATUTORY BACKGROUND

36.    In Mississippi, youth courts are given exclusive jurisdictions concerning delinquency among children, children in need of supervision (CHINs), neglected children, and abused children.  Miss. Code Ann. § 43-21-151.

37.    All 82 counties in Mississippi have youth court.  Youth court matters are usually heard in County Court and in the counties where County Court does not exist, youth court is held in Chancery Court.  Miss. Code Ann. § 43-21-107.   For many years, the City of Pearl was the only municipality in Mississippi to operate its own Youth Court.

## FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFFS

### Plaintiffs Regina Nell McCright, A.B.B., S.B.B., T.S.B.:

38.    On July 26, 2016, Pearl Police officers, who had requested the assistance of an ambulance, arrived, along with an ambulance, at the home of Plaintiff, Regina Nell McCright. Upon information and believe, her ex-husband, the children's father, had made a report claiming that there was a domestic disturbance in the home. As requested by Pearl Police, Ms. McCright went, by ambulance, to the University of Mississippi Medical Center. Her minor children were placed with a relative. Upon arrival at the hospital, Ms. McCright was examined and it was determined that no medical assistance was needed and she was immediately discharged. The day after her discharge, Ms. McCright went to the Pearl police and requested her children be

12

returned. She was informed that the children would not be returned and that the matter had been set for a Shelter hearing on August 1, 2017, in Pearl Youth Court.

39.     Neither Ms. McCright, nor her seventeen-year old son, who had requested to participate, but was denied entry into the court room, were allowed to participate in the August 1, 2017, Shelter hearing. None of the three minor children were afforded an attorney (Guardian ad Litem) to represent their interests in the hearing that resulted in their removal. Judge John Shirley entered an order granting custody of the minor child, A.B.B., to his paternal grandfather and custody of the minor children, S.B.B. and T.S.B. to their non-custodial, biological father. Ms. McCright was granted only supervised visitation consisting of one hour every two weeks, supervised by Child Protection Services. Judge John Shirley had previously, in his private practice, represented the children's non-custodial biological father.

40.     Thereafter, a Petition was not filed, and no adjudication hearing held. Despite there being no formal Petition filed, the children were removed with continued separation from their mother by Judge Shirley. Further, the layperson Guardian ad Litem appointed by the Court, Debra Baker instructed Ms. McCright to have an alcohol and drug assessment. There was no allegations of drug or alcohol abuse.

41.     However, in an effort to be reunified with her children, Ms. McCright completed a drug and alcohol assessment by Daniel C. Williams, Ph.D. with University of Mississippi Medical Center and same was provided directly to Debra Baker. Dr. Williams in his report states that Ms. McCright "does not meet the criteria for a substance abuse disorder. Her urine drug screen was negative for all substances tested. . . Specialized addiction treatment is not indicated at this time." Despite this assessment and report, on October 17, 2017, Debra Baker informed Ms. McCright that Baker had spoken to two different treatment facilities and "we all three are in

13

agreement" that educational classes should be recommended through Urban Rehab. Further, Petitioner would be required to pay the fees for said classes.

42.    Pearl Youth Court never set this matter for any hearing beyond the initial Shelter hearing. Upon request for a setting by Ms. McCright, she was told there would be no hearing until she completed twelve weeks of drug and alcohol classes, for which she would be required to pay.

43.    The Pearl Youth Court entered an order separating this family, which was not dismissed, and the family was not reunited until after the resignation of Judge John Shirley and the closure of the Pearl Youth.

44.    Further, Judge John Shirley, who also maintained a private practice, had previously, represented Ms. McCright's ex-husband to whom he gave custody of two of the children.

45.    As a direct result of Defendant's actions and inactions, Plaintiffs suffered irreparable harm, from being wrongfully withheld from one another for over five months, which will have life-long effects.

46.    Defendant's have violated Plaintiff's constitutional and statutory rights to family integrity by unjustified removals, continued separation and failure to use reasonable efforts to maintain the children in their home.

**Plaintiffs William Craig Gardner, Cynthia Gardner, S.F.G., and A.S.G.:**

47.    On the evening of February 27, 2016, at approximately 8:00 p.m., a Pearl Police Detective and a Rankin County Department of Human Services social worker arrived at the home of Craig and Cynthia Gardner and their two children S.F.G. and A.S.G. At that time, the two children were removed and placed in foster care due to alleged allegations of abuse. At the

time of the removal, the Gardners were not provided with any explanation as to the nature of the alleged claims of abuse. Thereafter, a Shelter Hearing was held in Pearl Youth Court on February 29, 2016.

48.     The only information that Judge John Shirley allowed to be heard at the Shelter hearing was the unsworn statement of the Pearl Police Officer, who stated merely there had been an allegation of abuse. While present in the court room with private counsel through legal services, the Gardners, neither parent nor their teen-aged son, were allowed to participate in the hearing. Judge John Shirley ordered the children would remain in the custody of the Department of Human Services.

49.     The court would not disclose any further information regarding the allegations of abuse and advised that neither the Gardners nor their counsel would be allowed to view the file until a Petition had been filed.  On March 7, 2016, the Gardners were informed that their children would be returned that evening. The Order returning custody stated additionally that the Gardners were to keep the court informed of any change in the their physical address, mailing address, or telephone number, with notification of any change to be provided in writing within five business days of the change. The Gardners were never provided any further information regarding the abuse allegations.

50.     Upon return of the children, Craig and Cynthia Gardner, as well as the children, continued to live with the turmoil of what had occurred and the fear and knowledge that it could occur again. Those fears, in fact, came true.

51.     In July of 2016, the police once again came to the family's home and S.F.G. and A.S.G. were once again removed and placed in foster care. This time there was allegedly a report of neglect received based on the conditions of the home. Thereafter, a Shelter hearing was held

on August 2, 2016. The Gardners were once again denied an opportunity to participate in the hearing. They were not allowed to question the allegations or offer testimony or evidence. Judge John Shirley ordered that the children remain in the custody of the Department of Human Services. Based upon a baseless recommendation by a layperson GAL, employed by the court, the court also ordered that Craig and Cynthia Gardner submit to psychological evaluations.

52.    Craig and Cynthia Gardner entered into a service agreement for the purpose of reunification and completed the agreement.

53.    On September 26, 2016, approximately eight weeks after the Shelter Hearing, a Petition alleging neglect was filed. On February 28, 2017, the adjudication and disposition hearing was held, and the court found that the children were neglected, that they were to remain in the custody of CPS, and that the psychological evaluations were to be completed with Dr. Williams "Criss" Lott, PhD., before any final determination regarding reunification would be made. This evaluation would come at a cost of Three Thousand Dollars and No Cents ($3,000.00).

54.    Further, the Court entered a form order titled "Order for Payment of Fees" which required Craig and Cynthia Gardner to pay "a filing fee of eighty-five dollars ($85.00)" and "a reasonable attorney's fee of seventy-five dollars ($75.00)" totaling One Hundred and Sixty Dollars ($160.00). The order required payment be made to "the City of Pearl" by submitting to the Pearl Police Department Court Records Clerk. The order further required that the fees were "to be paid IN ONE FULL PAYMENT, NOT INSTALLMENTS".

55.    Dr. Lott did conduct the evaluations and recommended that children be reunified with their parents. Child Protection Services also submitted a report to the court requesting reunification.

56.    However, notwithstanding the recommendations of Dr. Lott and Child Protection Services and without a hearing, the court refused to reunite the family.

57.    The family was not reunified until October 27, 2017. After the resignation of Judge John Shirley and the closure of the Pearl Youth, an Order of dismissal was entered by Rankin County Youth Court immediately reuniting the family.

58.    Throughout the proceedings, Pearl Youth Court took no action to protect the children's interest. Further, neither one of the two minor children were afforded an attorney (Guardian ad Litem) to represent their interests in the hearing that resulted in their removal.

 As a direct result of Defendant's actions and inactions, Plaintiffs suffered irreparable harm, which will have life-long effects.

59.    Defendants have violated Plaintiff's constitutional and statutory rights to family integrity by unjustified removals, continued separation and failure to use reasonable efforts to maintain the children in their home.

### Plaintiffs Kim Tyner, and T.R.T.:

60.    On September 29, 1999, Plaintiff Kim Tyner was finally divorced by entry of a Final Judgment of Divorce by the Chancery Court of Rankin County, Mississippi.    The Judgment incorporated a Child Custody and Property Settlement Agreement in which the parties agreed that primary physical and legal custody of their minor child, T.R.T.,  would be vested in Mrs. Tyner. Thereafter, the parties agreed for T.R.T.'s father to take temporary custody of him.

61.    In May of 2001, Jason T. Zebert was the Pearl Municipal Youth Court Prosecutor and Judge Jane A. Perdue was the Pearl Municipal Youth Court Judge, as well as the Referee for the Youth Court of Rankin County. The two courts shared the same location but maintained separate dockets. On May 15, 2001, Jason T. Zebert, acting as a private attorney representing

17

Mr. Tyner presented an Order of Temporary Custody to Judge Perdue, who, without affording notice to Plaintiff Tyner or the minor child, and without hearing or considering any evidence entered the Order for Temporary Custody. At that time, no petition had been filed, nor was one ever filed. The order was never filed with the Clerk. Further, Judge Perdue acknowledged having entered similar orders in the past. Plaintiff Tyner thereafter obtained counsel who requested a review hearing. At the review hearing, Judge Perdue refused to provide any basis for entering the Order for Temporary Custody and refused Plaintiff Kim Tyner the opportunity to present evidence. Judge Perdue's actions caused Plaintiff Tyner to be deprived of the custody of T.R.T. and caused T.R.T. to be deprived of the parental relationship with his mother.

**Plaintiffs Stacey Hallman, and H.H.:**

62.     After backing into a car in the parking lot of Walmart, Stacey Hallman was arrested by Pearl Police. Ms. Hallman had her child with her and a report was made to the Department of Human Services and the child brought into the State's custody. In September of 2016, Ms. Hallman went to Pearl Youth Court for a hearing. Her child was not returned to her, but rather remained in the State's custody. Further, the court denied her and her minor child visitation with one another. Thereafter, in December of 2016, another hearing was held. At this time, Ms. Hallman was given a drug test, which detected the presence of Adderall, for which Mr. Hallman had a doctor's prescription. The Pearl Youth Court refused to consider evidence from Ms. Hallman and again refused to reunify or allow visitation, and set another hearing until August of 2017. Ms. Hallman and her child were unnecessarily deprived of one another from September of 2016 to August of 2017.

## CLAIMS FOR RELIEF

63.    For the purpose of all claims contained in all Counts herein, Defendant, through Pearl Youth Court, a local government entity of Defendant, by its actions and inactions,    has engaged in a persistent, wide spread, and long-standing practice and custom of the foregoing constitutional violations, which equates to standard operating procedure.

## COUNT 1

### 42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF AND CONSPIRACY TO VIOLATE PLAINTIFFS' FIFTH AND FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS

64.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

65.    Plaintiffs assert these claims pursuant to 42 U.S.C. § 1983 against Defendants according to the specific parameters detailed below.

66.    Defendants actions occurred under color of state law for the purposes of 42 U.S.C. § 1983.

67.    Group Two Plaintiffs have a constitutionally-protected liberty interest in the care, companionship, upbringing, and nurture of their children.  Group One Plaintiffs enjoys a parallel liberty in being raised and nurtured by their biological parents and or guardian without unjustified government interference.

68.    Defendants willfully, deliberately and without justification violated Plaintiffs' clearly established Fifth and Fourteenth Amendment substantive due process right to family integrity.  Defendant's actions subjected Plaintiffs to egregious, arbitrary, and oppressive governmental interference with their most basic constitutional right to remain together as a family without coercive intrusion by state actors. Defendant's actions in unjustifiably and forcibly separating parents and children shock the conscience.

19

69.     As set forth in the preceding paragraphs, Defendants deprived Plaintiffs of their constitutional right to family integrity by, *inter alia*, separating parent and child or causing them to be separated on the basis of obviously unjustifiable information.

70.     Defendants failure to issue orders that included specific factual findings and unsubstantiated legal basis set in motion a chain of events that Defendant knew or reasonably should have known would lead to the deprivation of Plaintiffs' substantive due process rights to family integrity.

71.     Defendants deprived Plaintiffs of their constitutional right to family integrity by failing to conduct any independent investigation and inserted its own arbitrary judgment in place of the afforded constitutional rights and procedures designed to protect biological parents and their children of the fundamental right to family integrity.

72.     Defendants further deprived Plaintiffs of their constitutional right to family integrity by removing said child from the custody of his/her biological parent with continued separation because of unpaid fees or fines and ordering unjustified assessments and requiring payment for same as a condition precedent to reunification.

73.     Defendants continued to deprive Plaintiffs of their substantive due process right to family integrity by failing to take any action to restore custody of children their parent despite awareness that the initial removal was based on unsubstantiated factual allegations.

74.     Rather than taking corrective action to remedy initial errors in separating Plaintiffs, Defendants continued to violate Plaintiffs' substantive due process rights through, inter alia, its willful disregard of Parent Plaintiffs' compelling and constitutionally-protected interest in raising their children, their utter refusal to reunite parents and children, and failure to follow applicable state and federal statutes, regulations, and internal policies.

75.     Defendants frustrated Parent Plaintiffs' attempts to regain custody of their children and further deprived them of their constitutional rights by, inter alia, unjustifiably and severely restricting contact Plaintiff Parents and Plaintiff Children. This lack of communication has permanently and significantly deteriorated the natural bonding relationship between the parent and child.

## COUNT II

### 42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF PLAINTIFFS' FIFTH AND FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS

76.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs as if set forth herein.

77.     Defendants deprived Plaintiff Parents and Plaintiff Children of their rights to procedural due process by subjecting them to patently unfair procedures – or by failing to provide any procedural protections whatsoever-before removing children from parental custody.

78.     Plaintiffs' constitutionally-protected liberty interest in maintaining their family relationship requires that the state provide fundamentally fair procedures when it seeks to disrupt this relationship by taking custody of a child and placing him/her in the custody of strangers.

79.     Defendants deprived Plaintiffs due process by failing to give Plaintiffs proper notice and opportunity to be heard, as Plaintiffs were not given an opportunity to testify, cross-examine witnesses. Further, an attorney Guardian *ad litem* was not appointed for the Plaintiff Children.

80.     The harmful discrepancy in the Notice and the lack of proper notice deprived Plaintiff Parents of their constitutionally protected due process and liberty rights as it concerned her care, control and custody of Plaintiff Child.[11]

81.    By deliberately continuing an unjustified separation for failure to pay fines and fees, Defendants deprived Plaintiffs of their Fifth and Fourteenth Amendment procedural due process rights. Defendants acted maliciously to separate Plaintiffs by intentionally subverting Plaintiffs' constitutionally protected procedural and substantive due process rights.

82.    Defendants' deliberate, willful, and reckless actions and inactions set in motion a chain of events that it knew or reasonably should have known would lead to the deprivation of Plaintiffs' Fourteenth Amendment procedural due process rights.

83.    Defendants deprived Plaintiffs of their Fifth and Fourteenth Amendment rights to procedural due process by, inter alia, by failing to investigate any of the allegations that were leveled and by deliberately or recklessly denying Plaintiffs of their constitutionally protected rights to family integrity by removing said child without any factual substantiation or justification.

---

[11] Per the holding and discussion of the U.S. Supreme Court case, *Troxel v. Granville*, 530 U.S. 57 (2000), "The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719, 138 L. Ed. 2d 772, 117 S. Ct. 2258 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *521 U.S. at 720*; see also *Reno v. Flores, 507 U.S. 292, 301-302, 123 L. Ed. 2d 1, 113 S. Ct. 1439 (1993)*.

The liberty interest at issue in this case--the interest of parents in the care, custody, and control of their children--is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska, 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923)*, we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters, 268 U.S. 510, 534-535, 69 L. Ed. 1070, 45 S. Ct. 571 (1925)*, we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in *Pierce* that "the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *268 U.S. at 535*. We returned to the subject in *Prince v. Massachusetts, 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944)*, and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *321 U.S. at 166*."

84.    Defendants continued to violate Plaintiffs' procedural due process rights after removal of custody by failing to hold follow up hearings to determine if the custody should be returned to the parent, and thus depriving Plaintiffs their right to be heard to challenge continued separation.

85.    Defendants willfully and maliciously deprived Plaintiffs of their Fifth and Fourteenth Amendment procedural due process rights when faced with the state-initiated destruction of their family by commencing and pursuing an unfounded child welfare investigation, forcibly separating Plaintiffs on the basis of fabricated allegations, refusing to investigate the allegations, and ignoring evidence that the triggering allegations were false and unfounded.

86.    Defendant City of Pearl and Defendant Pearl Youth Court's actions resulted in substantial and irreparable damage to Plaintiffs' constitutionally-protected family relationship.

**COUNT III**

**42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF PLAINTIFF CHILDREN'S FOURTH AMENDMENT RIGHTS**

87.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

88.    Defendants deprived Plaintiffs of their clearly-established Fourth Amendment right to be free from unreasonable seizure when they prevented their parents from maintaining rightful custody of their children in the absence of emergency circumstances or established legal justification warranting removal of children from parental custody.

89.    Defendants deprived Plaintiffs of their FOURTH AMENDMENT right to be free of unreasonable seizure by removal of child from parent without establishing findings of fact that

23

clearly outline the legal justification under either emergency circumstances or other warranted and documented circumstances such as neglect or abuse.

90.     These unconstitutional seizures unreasonably interfered with and caused substantial damage to Plaintiffs' constitutionally-protected family relationship.

## COUNT IV

### 42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF PLAINTIFF PARENTS' FOURTH AMENDMENT RIGHTS

91.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

92.     Defendants deprived Plaintiffs of their clearly-established Fourth Amendment right to be free from unreasonable seizure when they prevented Plaintiffs from maintaining rightful justification warranting removal of child from parental custody.

93.     The unconstitutional seizure of Plaintiffs' children unreasonably interfered with and caused substantial damage to Plaintiffs' constitutionally-protected family relationships.

## COUNT V

### MALICIOUS PROSECUTION OF PLAINTIFFS

94.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

95.     Defendants acted maliciously and in the absence of probable cause to commence a Youth Court proceeding involving Plaintiff Children and against Plaintiff Parents.

96.     As a result of the maliciously state-instituted proceedings, Plaintiff Parents and Plaintiff Children were unjustifiably and unnecessarily separated from one another and suffered substantial damages.

## COUNT VI

24

## DEFENDANTS WERE ON NOTICE OF PRIOR DEPRIVATIONS OF DUE PROCESS

## AND OTHER CONSTITUTIONALLY PROTECTED RIGHTS

97.  Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

98.  Defendants knew of, either by constructive or actual notice, of prior deprivations of due process and other constitutional-protected rights by the Pearl Youth Court, as per the *Mississippi Commission on Judicial Performance v. Jane A. Perdue*, No. 2002-JP-01430-SCT, decided by the Supreme Court of Mississippi on August 21, 2003.

99.  *Miss. Comm. on Jud. Performance v. Jane A. Perdue* held that a previous Pearl Youth Court Judge was in "willful misconduct in office and conduct prejudicial to the administration of justice [and] brings her judicial office in disrepute."

100.  This finding was based on among other things:

    a.  Refusal and/or failure to issue an order without findings of fact to substantiate change of custody;

    b.  Refusal and/or failure to establish maintain an official file;

    c.  Refusal and/or failure to hear evidence;

    d.  Refusal and /or failure to hear witness testimony;

    e.  Refusal and/or failure to appoint a Guardian *ad litem*;

    f.  Refusal and/or failure to give proper notice to all parties involved;

    g.  Refusal and/or failure to give proper notice of a hearing, hearing date, time,                    and place;

    h.  Issuance of an order without a hearing;

i.    Other substantive and procedural due process grievances that amount to

clear deprivation of constitutionally afforded and protected civil rights.

101.    From the date of this finding, the City of Pearl and the Pearl Youth Court were

constructively and actively on notice of the engaged pattern and practice of behaviors, actions,

and omissions of statutorily designated responsibilities and duties that caused deprivations of

constitutionally afforded AND protected rights, including substantive and procedural due process

rights of thousands of children and parents as previously described.

102.    The City of Pearl and the Pearl Youth Court failed to remedy the deprivations as

set forth in the *Perdue* holding and as such, thousands of children and parents' constitutionally

protected rights were withheld, causing irreparable harm and damage, so much so that parent-

child relationships have been irretrievably damaged and broken.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray there be judgment rendered herein in favor of Plaintiffs

and against Defendants to the fullest extent permitted by law, including:

a.  Reasonable damages to compensate Plaintiffs for the physical and emotional distress

suffered as a result of Defendants' unconstitutional activities;

b.  Punitive damages in an amount to be determined at trial;

c.  Court costs, including discretionary costs;

d.  An award of reasonable attorney's fees;

e.  Such other relief as the Court may deem appropriate.


Respectfully Submitted the 11th day of May, 2018.


26

_____

John R. Reeves, MSB #4699
Law Offices of John R. Reeves, P.C.
355 South State Street
Jackson, Mississippi 39201
601-355-9600
john@johnrreeves.com

Kelly G. Williams (MSB# 102323)
The Law Offices of Kelly G. Williams,
PLLC
745 Avignon Drive., Ste. C
Ridgeland, Mississippi 39157
Telephone: (601) 982-1111
kelly@kellywilliamslaw.com

*Counsel for Plaintiffs and the Class*